## MURPHY v. ADDISON.
### No. 5646.

Court of Appeals of the District of Columbia.
Argued Feb. 13, 1933.
Decided March 13, 1933.

166

GRONER, Associate Justice, dissenting.

S. McComas Hawken, of Washington, D. C., for appellant.

Jo. V. Morgan, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

In the declaration filed below Addison claimed judgment against Murphy in the sum of $3,050.24, alleging that he had paid this sum to Murphy as the price of a note which the latter had agreed to sell and deliver to him, and that Murphy, after receiving that sum as payment for the note, had refused and neglected to deliver it to him, or to return the sum or any part thereof which had been paid to him therefor. The declaration also contained a count in the same transaction for money had and received. Murphy, by plea, denied that he had received the sum of $3,-050.24 or any sum from Addison, as the price of a note, or for any other purpose.

It appears that on January 23, 1928, Addison delivered to one Heley a check for $1,900 with which to purchase from Murphy a note to serve as an investment for Addison. The check was issued by the People's Home & Savings Association of Muncie, Ind., payable to the order of Addison, and by him indorsed to the order of Murphy. Heley, upon receipt of the check, forged Murphy's name upon the back of it, and succeeded in cashing it at a local bank. He thus fraudulently and criminally appropriated the money to his own use, all without the knowledge or participation of Murphy in any manner whatever.

Afterwards, to wit, on March 12, 1928, Addison delivered to Heley a similar check for $2,758, which Heley was to use for the purchase of another investment note from Murphy. This check likewise was indorsed by Addison to Murphy's order. Heley again forged Murphy's name upon the back of the check, and secured payment thereof from a local bank. This sum also was fraudulently and criminally converted by Heley to his own use without the knowledge or participation of Murphy.

On April 11, 1928, Addison delivered a third check to Heley, being in the sum of $3,050.24, also drawn by the People's Home & Savings Association of Muncie, Ind., upon an Indiana bank, payable to Addison's order, and indorsed by him to the order of Murphy. This check likewise was to be used in the purchase from Murphy of a note for Addison. Heley thereupon forged the name of Murphy as indorser on the check, and attempted to secure payment of it from a local bank, but failed. He then erased the forged indorsement of Murphy's name from the check, and and on April 13, 1928, shortly before the close of banking hours, went to Murphy's office, and told him that he (Heley) had no bank account, and asked Murphy to let him put the check in Murphy's bank account for collection. At the same time Heley requested that Murphy should sign a check payable to Heley for the same amount and deliver it to him, promising that he would hold it until the check for $3,050.24 was cleared by the Muncie bank. Murphy acceded to this proposal, and made out a bank deposit slip in his own name for the amount of the check, and handed it and his bank passbook to Heley, and permitted him to deposit the check to Murphy's credit in bank. At the same time Murphy gave his check to Heley upon the same bank for the same amount, with the understanding that it would be held by Heley until the other check had cleared. Murphy did not examine the check which Heley produced, nor see the indorsement thereon mak-

ing the check payable to himself. He had no pecuniary interest in the transaction, and understood that he was accommodating Heley by simply exchanging checks with him. Heley thereby secured payment of the check to himself and appropriated the proceeds to his own use.

It appears that prior to these transactions Heley had upon several occasions purchased notes from other parties as investments for Addison, and that upon such occasions Addison gave his check to Heley for the amounts thereof as a method of paying for the notes. Heley was also known to Murphy by reason of the fact that Heley had married a young lady who was reared in Murphy's family. Murphy did not deal in notes and had none to sell, nor had there been any communication between him and Heley or Addison on the subject of such notes. Murphy had no knowledge of the fact that the check for $3,050.24 had been delivered by Addison to Heley for the purpose of purchasing a note.

In the declaration filed below, Addison sought to recover from Murphy for the amount of the prior notes for $1,900 and $2,758, respectively, upon the theory that the indorsement of Murphy's name upon them was genuine. But these counts were withdrawn when it appeared that the indorsements were forged, and the case was submitted to the jury upon the $3,050.24 check alone.

The jury returned a verdict for Addison for $3,050.24, and judgment was rendered accordingly. This appeal followed.

In the court below the appellant filed ten assignments of error. The first challenged prayer No. 2 offered and delivered by the court on behalf of the plaintiff. The other nine assignments relate in part to the defendant's claim that Heley was acting as agent for Addison, and in part to the presumption that, where a party has it within his power to produce a witness whose testimony would reflect upon the transaction, and does not do so, it creates a presumption that the testimony, if produced, would be unfavorable to such party; and that, where a fraud has been practiced upon two innocent persons, the one making it possible for the fraud to be practiced is the one who must suffer by the fraud.

Plaintiff's prayer No. 2, which the court delivered to the jury, reads as follows: "The jury are instructed that, if they find from the evidence that the plaintiff delivered to Frank R. Heley the check dated April 11, 1928, in the sum of $3,050.24, payable to the order of the plaintiff and endorsed by the plaintiff to the order of the defendant, and that said Heley took the check to the office of the defendant and that the defendant made out a deposit slip for deposit of said check in his account in the National Bank of Washington and delivered to the said Heley his pass book for the purpose of having the deposit of said check entered therein and that said Heley, either at the direction of or with the knowledge and consent of the defendant, deposited the check to the credit of the defendant in the National Bank of Washington and that credit in said bank was given to the defendant in the amount of said check and that said check was ultimately presented for payment and was paid by the bank upon which it was drawn, and which credit became subject to the check or other disposition of the defendant, then the plaintiff is entitled to recover."

We think there was no error in this instruction. It is clear that, if a check is delivered to the payee named therein, and is credited to his account in bank, and no consideration is given therefor, the person delivering the check is in general entitled to recover therefor as for money had and received. This rule applies to the transaction now in question. The check which Addison indorsed to the order of Murphy came to the hands of Murphy, and was credited with his consent in his account in the bank, by which means the fund represented by the check was brought into his possession. If the transaction stopped at that point, there could be no doubt that Murphy would be accountable to Addison for the amount of the check as for money had and received. The fact that Murphy gave a check to Heley for the same amount at the same time does not alter the relationship between Murphy and Addison. In other words, if Murphy became indebted to Addison because of the receipt of Addison's check in the sum of $3,050.24, that indebtedness would not be discharged by the payment of a similar amount to Heley personally. Heley was never invested with the title to the check which came into the possession of Murphy. Consequently the check itself showed no evidence that Heley was personally entitled to any part of the sum represented by it. Murphy, however, unintentionally assisted Heley in converting the funds represented by the check from the character which the check disclosed into funds within Heley's personal possession.

It is claimed by appellant that Addison

was guilty of negligence in intrusting the check to the custody and control of Heley. This, however, does not seem to be the case, for the fund was protected by the fact that Heley could not obtain possession of it for his own use without the commission of a crime, nor could the conversion of the money which was finally accomplished have been secured by Heley without the cooperation of Murphy. We therefore find no evidence in the record tending to sustain a charge of negligence against Addison. On the other hand, Murphy was negligent in accepting the check which Heley proffered him, and taking credit with it in his bank account without examining its terms. Had he made even a casual examination of the check, he would have discovered that it was indorsed payable to his order, and that fact would naturally have induced him to make an investigation of the matter which would have saved him from the imposition that was being practiced upon him.

Upon the subject of relative negligence the court, at the defendant's request, instructed the jury as follows: "You are instructed that when a fraud has been practiced upon two innocent persons, the innocent person making it possible for the fraud to be practiced is the one who must suffer by the fraud."

It is contended by appellant that Heley was the agent of Addison, and that therefore, when Murphy dealt with him, he was in legal effect dealing with Addison himself. This conclusion cannot be sustained. When Addison intrusted Heley with the possession of the check made payable to the order of Murphy, and to be delivered to him upon receipt of a note, it cannot be said that he constituted Heley his general agent to deal with the fund represented by the check. Therefore the subject of agency does not figure in the transaction. Appellant claims that, where a party who is able to produce testimony upon a relevant matter fails to do so, the presumption arises that the testimony will be adverse to him. This rule, however, has no application in the present case, for it does not appear that either party omitted to produce all the evidence at his command in relation to the issues. The only witness to the transaction who failed to testify in the case was Heley, and his relation to it is obvious and his whereabouts is unknown.

We are of the opinion accordingly that the judgment entered below is sustained by the testimony in the case. It is therefore affirmed with costs.

Mr. Justice GRONER dissents.